## Michie *v.* The Planters' Bank.

If the elder judgment creditor suspends his execution, he loses his priority of lien; and a levy and sale of property on a junior judgment will be regular, and accrue to the benefit of such judgment.

The lien is but a security, to be pursued with diligence, and in good faith.

IN error from the circuit court of the county of Yazoo.

At the November term, 1838, of the circuit court of Yazoo county, the appellant applied for an order to the sheriff of that county to pay certain moneys, in his hands, which had been levied by an execution on a judgment in his favor rendered at a former term of that court in satisfaction of the judgment. In support of this application he read to the court the record of the judgment which he had obtained against George W. Hawley and others, at April term, 1838, and the writ of *fieri facias* by which the money had been levied. The execution was issued on the 15th day of August, 1838, and went into the hands of the sheriff on the 17th day of the same month. The appellees resisted this motion, and claimed the application of the money to the satisfaction of a judgment which they had recovered against the same defendants on the 25th day of November, 1836, upon which an execution had been issued returnable to the October term, 1837, of that court. This execution had been levied and a forthcoming bond taken and forfeited. Subsequently, an *alias execution* was delivered to the sheriff, but before any steps had been taken by him to levy it, the appellees directed him to stay all proceedings under it until the next term of the court, after which, he was by the further instructions of the Bank, enjoined to take out a new execution which might also *with the same consent* be suspended until the next term following. These orders to delay the execution of the judgment in favor of the Bank were not revoked until the 15th day of October, 1338, when a writ of *fieri facias* was again taken out. In the mean time Michie's execution had been levied. The court below directed the money to be applied to the

payment of the judgment of the Bank, and this is the error complained of.

It was in proof, that if the execution in favor of the Planters' Bank was satisfied, the execution in favor of Michie would be excluded from the fund made; and that if the Planters' Bank execution had not been suspended, it would have been long since paid.

G. S. Yerger for plaintiff in error.

I. By the common law, a judgment did not bind lands, except in debt against the heir on the bond of his ancestor. 2 Bacon's Ab. A. But an execution bound the goods from its test, or award. 4 Comyn's Digest, Execution, D. 2.

By the statute of Westminster 2d, giving the Elegit a moiety of the lands of the debtor were extendable. And by this statute and those giving the statute Merchant and Staple, a lien was created. 2 Bacon's Ab. 353. These statutes were never in force in Mississippi. The questions, therefore, which arise on this record must be determined by the act of 1822. Rev. Code. The act of 1824, Statutes, page — , and the principles of the common law, as applicable to these statutes.

I will consider the questions to be investigated. First, under the act of 1822. And secondly, whether the act of 1824, in making the lien take date from the judgment, instead of the delivery to the sheriff of the execution, intended to alter the law as to fraud in holding up executions.

1. The statute of 1822 is a copy of the statute of Charles—and the decisions made in England and the United States, under that and similar statutes, will be sufficient to settle the first point in the case

The lien given to a creditor is a mere security—it is a general lien, covering all the debtor's goods; hence any act on the part of a creditor, which may be injurious to the rights of other creditors, or any agreement to delay the enforcement of his lien, is a violation of good faith towards other creditors. It operates a fraud upon their rights; and however pure the intention of the parties may be, it is a *legal fraud.*

To constitute this legal fraud, the intent to delay or defraud others, is all that is necessary.

The statutes of 21 and 27 Eliz. in relation to fraudulent conveyances of the party, were merely declaratory of the common law. They only apply to actual conveyances from the party. But in relation to liens or securities which arise by operation of law, for the satisfaction of debts, any agreement to postpone their execution, is prohibited by the law. It is against its policy, and tends to lock up by a general and sweeping lien all the debtor's property. Pringle *v.* Isaac, 5 Ex. Rep. 147. Kempland *v.* Mc-Kauly cited therein, 1 Rawl Rep. 368.

The principle of these cases is, that where a lien is given by law, public policy requires good faith: and agreements not to proceed upon it, necessarily suspends it, and operates a fraud on other creditors. It is a waiver of the priority given by the law. In this case the sheriff was directed explicitly not to proceed on the bank execution, until the subsequent term. Before the expiration of the stay, the goods were levied on under Michie's execution, and while the order to stay was in full operation, was Michie bound to wait until the time expired? Surely, not. If his execution was levied at a time when the bank had estopped herself from proceeding—when no levy could be lawfully made on the bank execution, will the subsequent revocation without the consent, or even with it, do away the legal effect of Michie's levy.

2. Does the act of 1824, which makes the lien take effect from judgment, instead of delivery or seisen, alter the rule of the common law?

The lien in its nature is precisely the same—the time at which the lien commences its operation is only altered. The lien is the same by both acts. What is it by the act of 1822? " A right to have the property bound by it appropriated to satisfy the execution delivered." What is it by the act of 1824? " A right to have the property bound by it, appropriated to satisfy the judgment." If an execution issues under the first, the property is bound. If a judgment is rendered under the last, the property is bound. If, after the lien attaches under the first, you order the sheriff not to proceed, and another execution is afterwards delivered, this last is entitled to be satisfied first, although the first creditor immediately proceeds under the identical execution which

bound the property; because having ordered a suspension, the rights of the junior execution immediately attached.

If after the lien attaches by judgment you suspend it by agreement, does not the lien of the younger judgment immediately attach?

But the question is easily solved. What are the liens? The execution lien, all admit, is a mere security, a mere right to enforce satisfaction. If the judgment lien is the same, the same consequences must necessarily follow. And that it is the same, vide 4 Kent's Com. 437.

A statute acknowledged bound goods and lands, 3 Bacon's Ab. 364, 369. Yet a suspension of the right to execute it, discharges it as to another. 3 Bacon's Ab. 370.

The point has been expressly adjudged in Peck's Rep. 30, and no distinction as to the binding efficacy of the lien or of the manner of its discharge in law. Sanford *v.* Roosa, 12 John Rep. 162. No legal sale could be made under the Planters' execution. It was revoked without authority. The bank had no right to retract.

II. On the above point, I have the most perfect reliance. But there are others, which, in my opinion, will determine the case for me.

I contend the lien of judgment and execution only extends to and binds the goods and lands, as against the debtor and his heirs or purchasers under him. Not as against or between judgment creditors.

Persons who purchase, can take security—can look out for indemnity. Purchasers at execution sales cannot—to hold that the lien extends to them will destroy both debtor and creditor. The lien may exist for years—may be levied on lands or slaves, and sell them years after they have been sold under other executions. Establish the rule, that it is a lien against all the world, and the unfortunate debtor is doubly sacrificed. No person will bid.

Let us see what the courts mean, and what the legislature mean, when they say, "lands or goods *shall be bound by the judgment* or the award of execution, or delivery of execution."

By the common law, goods are bound by the award of execution, and by statute they are bound by delivery to sheriff. 4 Comyn's Digest, Execution. Now when we ascertain the mean-

ing of these words, the question is settled. How are they bound? as to the debtor and purchasers only. Not as to other judgment creditors.

Now if the lien or binding efficacy of it extended to all the world, a sale made by the sheriff under an execution last delivered would not pass the property as against one previously delivered. 4 East, 545. That a sale made under the last is good is established by many cases, which it would not be if the goods were bound to all intents. Payne *v.* Drew, 537 *et seq.* and cases there cited. So in 4 Bibb, 29. 1 Pirtle's Digest, Title Execution, which shows there is no lien as between creditors.

This is not only the law as to lien by execution, but also by judgment.

It is true that under the statute which gives the Elegit, and which says "all the lands seised or possessed at the time shall be extended," some difference of opinion has arisen. Bingham on Executions. In Tennessee the courts have given full effect to the statute, although a *fieri facias* and not an Elegit has been resorted to. Whilst in North Carolina, (1 Hay's Rep.) and in Virginia it is holden if a *fieri facias* is resorted to, and not the Elegit, there is lien as between creditors.

But this question must be decided under our statute of 1824, which says "the property shall be bound from the judgment, and shall be liable to pay it."

It is a rule in construing statutes, that when words have a known and settled meaning at common law, or when the same words in another statute have received a judical construction, the legislature will be presumed to have used them in that sense.

At common law, goods were bound from teste. The statute of Charles said all goods should be bound by delivery to the sheriff. The words in the statute of Charles, are precisely those used in our act of 1822, and in the act of 1824. The first act says, the property shall be bound from the delivery to the sheriff. The act of 1824 says, the property shall be bound from the judgment, and liable to pay it. Liable to pay it as against whom? Purchasers and the executors, &c. of debtor.

The Kentucky statute is like ours, and that of Charles. The settled meaning of these words "bound," &c. is that that they

[Michie *v.* The Planters' Bank.]

shall be bound only as against the debtor and the heirs or purchasers from him, not against another execution creditor. 1 Pirtle's Digest, Execution. Payne *v.* Drew, 4 East, 538, 539, 540. Lorae *v.* Jenkins, 2 Eq. Cases Ab. 381. 4 Bibb 29. 3 J. J Marshall.

In New York, lands are bound "by statute from the docketing of the judgment," and the same construction has been given to the New York act, 12 John. Rep. 162. They are mere securities as to subsequent incumbrances by the debtor. 4 Kent's Com. 437.

Surely the legislature never intended by the act of 1824, to alter the previous law, except that the lien whatever it was, should run from the judgment, instead of the delivery of execution. To give to the statute a different meaning, would be most abominable and pernicious in its consequences.

III. If then the lands and goods, by the act of 1824 are only bound as to subsequent purchasers, and there is no lien as to creditors, how are the rights of creditors to be determined? This point is answered clearly and satisfactorily by the court in Payne *v.* Drew, 4 East, 545. 4 Bibb, 29. 3 J. J. Marshall. "When there are several authorities," &c. (read from beginning of page 545 to end of case.)

In Pirtle's Digest, Executions, the first levy is entitled to first satisfaction. So 4 Comyn's Digest, 247. Why is this so? It was clearly competent for the sheriff to levy and sell under the last. If he levies under it, it is by the levy on personal property a satisfaction at the instant of the levy. He becomes responsible to the judgment creditor for the goods levied on, and it would be unjust to appropriate it to an older judgment, after the younger judgment or execution creditor has battled it through, at great expense. Hutchison *v.* Johnston, 1 T. Rep. 729, supports this view of the case; then there was no actual levy.

True, it is the duty as a matter of public policy, for the sheriff to levy and sell under the elder execution or judgment, when both are delivered to him. Where there are several authorities under which the sheriff may levy and sell, the law to insure peace and quiet, requires the sheriff to levy and sell under the oldest. If he does not he becomes liable, and if he levies them all at *one time*, and sells under all, the oldest shall have the proceeds. The maxim in such case is, "he who is first in point of time, is best in

[*Michie v. The Planters' Bank.*]

point of right;" but if he levies first under one, that one has gained a priority.

IV. In this case, the Bank execution was suspended, the sheriff had no power to sell under it, and the question is, "if a sale under Michie's judgment would have been valid," was not the sheriff bound to levy and sell under it. That he was, see 4 East, 537.

It is manifest, if the above views be correct, that there are no liens between creditors, as against Michie the Bank had no lien. Michie's judgment was extinguished by the levy, and he is entitled to the proceeds. The Bank could not sleep upon her judgment. In this case the maxim, "*vigilantibus non dormientibus leges subvenient*," applies in full force. The principle in effect has been decreed by this court in Adams *v.* Dyer, 8 John. R. 349.

Again, at the time of the levy under Michie's execution, the plaintiff could not proceed under his; the levy satisfied our judgment, and we are entitled to proceeds. 6 Wendal's Rep.

Thompson for defendant in error.

Judgment is a lien on the debtor's property from the rendition. Act of 1824, ch. 74, sec. 12, page 52.

Howard's Reports, vol. I. page ——, and the lien is given between creditors, see opinion, 63.

It is contended by the counsel for the plaintiff in error, Michie, that the execution of the Bank in the case under consideration, lost its priority by the act of the agents of the Bank in suspending its operation, and that it became *dormant* and *fraudulent*.

Upon the subject of the loss of execution liens many adjudged cases are cited, and many more might be cited, for the books are full of adjudications, (both English and American,) on the point.

By the counsel for the Bank it is, 1st replied, that those adjudications are not applicable to the question under discussion; the case under consideration being one of judgment lien, and not execution lien.

There is a discrimination in the law between the two cases, and that which would cause the loss of the execution lien, will often not affect the judgment lien.

Where an execution creditor having once given impetus to his execution, and after levy suspends its operation, leaving the debtor

[Michie *v.* The Planters' Bank.]

in the possession, use and enjoyment of the property, or where he does acts which the court can legally and properly construe into a design to aid the debtor in hindering and delaying his other creditors in the collection of their just debts, suffering him to retain the possession and enjoyment of his property; the principle of the statute of frauds is made to bear on the case, he is considered to be acting *mala fide,* his execution is adjudged to be *dormant* and *fraudulent;* and loses its precedence.

That such distinction is made in the law between judgment and execution liens, the counsel for the Bank rely upon the numerous authorities cited in favor of the plaintiff in error, Michie, and also, in support of the position, refer to the following case :— 17 Johnson, 273, Kellog *v.* Griffin.

To show that the acts of the creditor which will cause a loss of his judgment lien in favor of a junior judgment are materially different from the acts which will cause a loss of the execution lien, and that the Bank in this case has done no act such as those reported in the books as sufficient to destroy their judgment lien, see the case of Porter's Lessee *v.* Cocke, Peck's Rep. p. 30, cited by the counsel for the plaintiff in error, Michie ; and also see the case of Kellog *v.* Griffin, before cited, 17 John. p. 273.

If the Court should be of opinion that the law upon the subject of loss of lien, or precedence to right of satisfaction, applies indiscriminately to judgments and to executions, we contend that the Bank has done no act which, under a correct understanding of the numerous authorities cited, can be construed into an intention to aid the debtor in hindering and delaying his other creditors in the collection of their debts, no act of which the plaintiff has a right to complain, or which has in the slightest degree prejudiced his rights.

We appeal to each and every case cited by the counsel on either side, and confidently contend, that the facts in this case are not so strong against the bank, as those in any one case where the execution was decided to be dormant and fraudulent.   And the facts in many of the cases to be found in the books where the execution was decided not to be fraudulent and void or dormant, were much stronger against the oldest creditor, than they are in the case

12*

under adjudication.   See 8th Johnson, 20.    2 Johnson, 417.    11 Johnson R. 109.    3d Cowen, 278.    5th Cowen, 390.

The counsel for the bank contend that the record shows the property was sold under both executions;  but if by Michie's alone the bank is entitled to the money.    4 Yeat's Rep. 197.   The sheriff having two executions in  his  hands  and sells, it is immaterial on which he sells.   The one having the priority will be preferred and the court will order the money to be paid on the elder execution, and so although the sale was made on the younger.    Walker's Rep. 548, Lynn *v.* Gridly, see 9  Wendell, showing that the lien exists in relation to judgment creditors, page 157.

A levy is not a satisfaction, it suspends the judgment till the property is disposed of, and if taken by a better title or a prior lien, the execution is not satisfied, nor the judgment on which it issued.

Mr. Justice TROTTER delivered the opinion of the court.

By the common law, a judgment creditor acquired a lien upon the goods of the defendant from the teste of the writ of *fieri facias.* The act of the 29th Charles 2, gives  the lien from the time of the delivery of the writ to the sheriff.   It has always been held, however, in England, that if two writs are delivered, and the sheriff shall execute the one bearing teste the last day, or the one last delivered, such execution shall not be avoided, but the plaintiff improperly postponed shall have his remedy against the sheriff only, who is bound to do his duty at his peril.   The property in the goods is bound by the sale, and cannot be seized by the elder execution.   The reason is, that sales made by the sheriff ought not to be defeated, for if they are, no man will buy goods levied upon a writ of execution.   Such was the language of Lord Holt, in the case of Smallcomb *v.* Cross & Buckingham, Ld. Raym. 252.   The language of the statute 29th Charles is, that the goods of the defendant shall be "bound from the delivery of the writ to the sheriff."   In the case of Lowland *v.* Tomkins, 2 Eq. Cas. Abr. 381, Lord Hardwicke has given the same construction to these words of the statute, that Lord Holt has in the case of Smallcomb *v.* Buckingham, just noticed.   He says that neither at common law,

nor since the statute is the property of the goods altered.   This doctrine is sanctioned by the Court of King's Bench, in the case of Payne *v.* Drew, 4th East, 539, in which it is declared to be a well settled principle, that a sale by a sheriff under a second execution, when he had a former one in his hands, is valid and vests the property in the purchaser.   That though the writ is binding as against the defendant from delivery, yet it cannot be regarded as self-executed by its own proper force and legal effect for all purposes.   That whilst it is the duty of the sheriff as between himself and the several plaintiffs to sell under the writ first delivered, though he may have seized under the last; yet his sale under the junior writ is good.   The court of appeals of Kentucky have established the same rule in the case of Tabbs *v.* Harris, 4th Bibb, 29, in the construction of a statute of that state, similar to the act of Charles.   In that case, the money in the hands of the sheriff was levied upon Tabb's execution, though it was delivered after Harris's, yet the court ordered it to be applied to Tabb's execution.

The act of 1822 of this state is exactly like the statute of Charles, and is therefore subject to the same construction.   It is, therefore, beyond controversy, that the lien in favor of judgment creditors either at common law, or since our act of 1822, does not bind against other judgment creditors, but may be defeated or lose its priority by a sale under a junior execution.   But the act of 1824 binds the property of the defendant from the time of entering the judgment, and it is urged by the counsel for the appellees that the analogy of the decisions in relation to the English statute, does not apply to a lien by virtue of a judgment.   That in consequence a sale under the junior judgment is void as against an elder one, and that the property is still subject to be seized in satisfaction of the prior judgment.   Be this, however, as it may, it is very evident that the lien created by this statute is, in one respect, similar to that given by the act of 1822, it may lose its priority by the act of the creditor himself.

The lien after all is but a security, and whether that which is created by the act of 1824 binds all the world or not, it is still as a mere security, to be pursued with diligence and in good faith. When therefore the law gives to a prior judgment a right to a prior satisfaction, it intends that this favor shall be pursued with

as little delay or injury to other creditors as possible. It may be lost by laches. Has the Bank pursued its remedy in this case with the diligence thus required by law and sound policy? The letter of the attorney to the sheriff which was authorised by a resolution of the directory of the Bank, was an instruction to the sheriff to stay the execution, if not for an indefinite period, at any rate for six months. He is directed to return the writ then in his hands to the succeeding court, and afterwards to take out a new one, which might be suspended in like manner until the next court afterwards, *with the same consent.* This was not only an agreement to stay the execution then in the hands of the officer, but is an undoubted promise to suspend the next in the same manner. This is surely a much stronger case than that of Porter's lessee *v.* Thomas Cocke, Peck's Rep. 30, in which the lien of the elder judgment was postponed. In that case the execution on the senior judgment was levied on land of the defendant. An injunction was obtained, and after its dissolution the plaintiff agreed with the defendant, in consideration of a partial payment of the judgment, to stay the execution six months. In the mean time an execution on a junior judgment came to the hands of the sheriff, under which he sold. It was held that the lien of the first judgment was defeated as against the other judgment creditor, and the sale was held to be valid.

If, says the judge who delivered the opinion of the court, the plaintiff may delay the collection of his judgment six months, and retain his lien, to what time may he not extend it. In the case of Payne *v.* Drew, before noticed, the court held that a sequestration which bound the goods had lost its priority by reason of the laches of the sequestrators in delaying to execute the writ for eighteen months, and it was so held upon principles of public convenience and to prevent fraud and vexatious delay. It is again emphatically asked by the judge in that case, "if the sequestration was not enforced within the eighteen months, at what period was it expected that it would." The judgment of the court is put upon the simple ground of delay and negligence. The sequestration had been in the hands of the sequestrators for the eighteen months when the writ of *fieri facias* was delivered to the sheriff. The intention in the delay was not made a sub-

[Michie *v.* The Planters' Bank.]

ject of inquiry.  The writ of sequestration became dormant and therefore lost its lien.

In the case of Whipple *v.* Foot, 2 John. Rep. 216, it was held that if the sheriff, by directions from the plaintiff, suffer goods which have been levied upon, to remain in the possession of the defendant, it is a fraud upon other creditors, and the execution becomes dormant.  The same point is settled in the case of Storm *v.* Woods, 11 John. Rep. 110.  The same is held in several other cases in New York.  If the lien created by the law in this case be merely a security, and confers no *jus ad rem,* it may be lost by any agreement or act of the judgment creditor, which would discharge the liability of a surety, under an ordinary contract.  It has been decided that where the creditor, by agreement with the principal debtor, enlarges the time of payment without the consent of the surety, the latter is discharged.  3 Mer. Rep. 278.  It would be repugnant to every principle of sound policy, and open the broadest avenues to fraud and injustice, to hold that the lien in favor of judgment or other creditors may be enforced at the mere option of the party, or that it may keep off other creditors equally meritorious, without any step to preserve it.  We are therefore of the opinion that the agreement of the Bank in this case, rendered the execution in its favour dormant, as against the claim of Michie, and that he is entitled to the money levied on his execution.

The judgment of the court below must be reversed, and judgment rendered here, that the sheriff pay the money accordingly.